## CHARLES E. GORMAN *vs.* JOHN J. BANIGAN *et al.*

| 22 | 22 |
| 24 | 269 |

PROVIDENCE—MARCH 30, 1900.

PRESENT: Matteson, C. J., Stiness and Tillinghast, JJ.

(1) *Discovery. Equity Pleading and Practice.*

A bill in equity for discovery, in aid of an action of assumpsit to recover upon a *quantum meruit* for professional services as an attorney at law rendered to the respondents in and about the probate of the will of their father, and in effecting a settlement with the widow of the testator, alleged that in order to prove what would be a reasonable compensation for said services it was necessary to show the value of the entire property belonging to the estate of the testator; that the personal estate of the testator was variously involved and jeopardized in said contest with the widow; and that the respondents, the executors of the will, having been exempted from filing an inventory of the estate, the complainant had no way of ascertaining the extent of the same except by discovery:—

*Held,* that (1) the bill failed to show any contest, but at the most an anticipated contest. (2) Assuming a real contest, the bill failed to disclose how or why the estate was jeopardized thereby to the extent of enabling the court to judge thereof. A mere allegation of this sort is not enough in a bill for discovery. (3) That, assuming an appeal from the probate of the will and that the will would not have been sustained, the estate could not have been jeopardized. (4) That, assuming a contest and that the will would have been sustained, the bill did not disclose any resulting benefit to the estate thereby.

*Held,* further, that the action at law stood upon no different footing from the ordinary action to recover for professional services.

*Quære,* whether, if the bill had disclosed that the estate was in fact in jeopardy and that the complainant by his skill and ability had rescued and saved it, the general discovery prayed for would have been granted?

In order to maintain a bill for discovery in aid of a suit at law, it is necessary for the complainant to show that the information sought is relevant and material to the issue or to some issue raised in such suit. He must also show that he is justly entitled thereto as evidence in connection with the preparation and trial of his case, and that such evidence is necessary to enable him fully to prosecute or defend the same.

It is not sufficient for the complainant to allege that the matters as to which discovery is sought are material to the proving of his action at law, but he must state his case in such manner that the court will be able to see how such matters may be material on the trial thereof.

(2) *Value of Professional Services.*

Manner of determining the value of professional services discussed.

BILL IN EQUITY FOR DISCOVERY in aid of a suit at law. The facts are stated at length in the opinion.    Heard on exceptions of complainant to answer of respondents.    Exceptions overruled.

TILLINGHAST, J.    This is a bill of discovery whereby the complainant seeks to obtain certain specific information as to the condition, extent, and value of the estate of the late Joseph Banigan, in aid of a suit at law which the complainant has brought against the respondents, who are the executors on said estate.

The bill alleges that Joseph Banigan died on the 28th day of July, 1898, seized and possessed of a vast estate, both real and personal, and of great value, leaving a last will and testament and a codicil thereto in which the respondents— his four children—were named as executors and residuary devisees ; that he left surviving him his widow, Maria T. Banigan, and said children ; that on the —— day of June, 1898, the respondents, learning that the said widow was dissatisfied with the provisions made for her in said will, and anticipating that she would not accept its provisions and would contest the probate thereof, retained and employed the complainant as an attorney and counsellor-at-law to represent and act for them in effecting an agreement with said widow which would avoid any contest over the probate of said will, and of consulting with and directing them in and about the probate of said last will and codicil.    That from and after said —— day of June, 1898, until the first day of January, 1899, the complainant, at the special instance and request of the respondents, consulted and advised with and performed various valuable professional services for them in and about the probate of said will and codicil, and about certain negotiations with said Maria T. Banigan, and in and about said will and the estate devised thereby, during which time the complainant rendered intricate, difficult, and valuable professional services as an attorney and counsellor-at-law in connection with the probate of said will, and in the nego-

tiations and settlement between said widow and the respondents, whereby a settlement and adjustment of said contest was brought about by the complainant, which was of great value to the respondents and to the estate of said Joseph Banigan; and that by reason of said employment and services rendered, the respondents became indebted and liable to pay the complainant such sum as the nature, character, and extent of his services were reasonably worth.

The bill then sets out that the respondents have refused to pay the complainant a reasonable compensation for his services, and that he has commenced an action at law against them to recover therefor, which action is now pending in the Common Pleas Division of this court. The bill further alleges that in the trial of said action, in order to prove what a reasonable compensation for the services rendered as aforesaid would be, it is necessary to prove: (a) the amount of property involved in said business ; (b) the interests, as well as the questions of law, involved therein ; (c) the actual labor done and the benefits resulting from said services, and (d) the results reached, as well as the reputation and capacity of and the labor performed by the complainant. The bill further alleges that the personal estate left by said Joseph Banigan, as to which said services were rendered, was variously involved and jeopardized in said contest, and though the value thereof and its conditions are unknown to the complainant, the said respondents are each fully informed thereof but are unwilling to disclose the same to the complainant, and as they, as executors of said will, have been exempted from filing an inventory of said estate, the complainant has no way of ascertaining the same except by a discovery thereof by the respondents.

That inasmuch as the evidence in proof of what a reasonable compensation is for the complainant's services must consist of the testimony of experts, or persons familiar with professional services and compensation therefor, it is necessary and important that such witnesses, upon being called upon to express an opinion, should be informed of the nature,

amount, condition, and value of said personal estate, as well as the amount and value of said real estate, as to which last the complainant can furnish evidence without any discovery thereof.

The bill then avers that it is absolutely necessary for the proper preparation of the complainant's said action for trial that the respondents make a full discovery of the facts aforesaid, and that he is unable safely to proceed to the trial of said action without a discovery being made, as aforesaid. ·

The bill, therefore, prays that the respondents be required to furnish a full and itemized account of all the stocks, bonds, · bills receivable, notes, securities, mortgages, money in banks, and all other personal property of every kind and description which belonged to the testator at the time of his decease.

The answer of the respondents denies all of the material allegations of the bill, except that the complainant was retained in the matters relating to the probate of the will, but as junior counsel only ; it denies that there was in fact any contest over the will, and avers that no appeal was taken from the probate thereof, and that the negotiations had with Mrs. Banigan, which led to the final settlement with her, were only as to purchasing her interests in the estate given to her by the will, and denies that with these negotiations the complainant had anything whatever to do, except that after the terms of settlement had been agreed upon to prepare the instruments to carry the same into effect, and these subject to the revision and approval of the respondents. and their senior counsel. It admits, however, that certain professional services were rendered in the capacity aforesaid, and avers a readiness to pay the complainant so much as his services were reasonably worth. It also denies that the nature, character, and extent of said services were such as to render the discovery sought by the bill necessary, important, or relevant to the complainant's action at law, and it avers that the complainant in his said bill has not set out his alleged services in such manner as to sufficiently show the necessity and materiality of the discovery sought from the respondents or to

entitle him thereto. The respondents also incorporate in their answer a plea in bar and a demurrer as to the discovery sought, based upon the same grounds as those set up in the answer. See *French* v. *Rainey*, 2 Tenn. Ch. 640. They also set out the will of Joseph Banigan, and the terms and conditions of the settlement which was made with said Maria T. Banigan.

The case is before us on the complainant's exceptions to the answer for insufficiency in not answering the specific interrogatories contained in the bill, which call for a full and itemized account of all the personal estate of the deceased, as aforesaid.

(1)    In order to maintain a bill of discovery in aid of a suit at law, it is necessary for the complainant to show that the information sought is relevant and material to the issue or to some issue raised in such suit. He must also show that he is justly entitled thereto as evidence in connection with the preparation and trial of his case, and that such evidence is necessary to enable him fully to prosecute or defend the same. *D'Wolf* v. *D'Wolf*, 4 R. I. 450; *Arnold* v. *Water Co.*, 18 R. I. 189; *Finch* v. *Finch*, 2 Ves. 492; *Bailey* v. *Dean*, 5 Barb. 297. Some of the adjudged cases go further than this, and require the party seeking a discovery to show affirmatively in his bill that the right which he seeks to enforce at law cannot be established without the discovery sought. *Whitesides* v. *Lafferty*, 9 Humph. 27; *Vaughan* v. *Ry. Co.*, 4 Sawyer, 280. But the decided preponderance of authority seems to be to the effect that if the discovery may be in any way material to the complainant for the purpose of his suit, the respondents may be compelled to make it. 1 Dan. Ch. 6 ed. 570-1; *Kuypers* v. *Church*, 6 Paige, 570; *Uhlmann* v. *Arnholt*, 41 Fed. Rep. 367; *Beall* v. *Blake*, 10 Ga. 449. Sir J. Wigram says, however, that "In determining whether *particular* discovery is material or not, the court will exercise a discretion in refusing to enforce it where it is *remote in its bearings* upon the real point in issue and would be an oppressive inquisition." At all events we think the juris-

diction invoked by a bill of this sort is one which should always be exercised with caution, as it is liable to be used for improper purposes. *Lea* v. *Saxby et al.*, 32 L. T. Rep. 731; *Kennedy* v. *Dodson*, 1 Ch. Div. L. Rep. (1895) 334; *Carver* v. *Pinto Leite*, 7 L. Rep. Ch. App. Cases, 90. Wigram on Discovery, *supra*, p. 2, par. 5. Moreover, it is not sufficient in a bill of discovery for the complainant to allege that the matters as to which a discovery is sought are material to the proving of his action at law, but he must state his case in such a manner that the court will be able to see how such matters may be material on the trial thereof. *Lane* v. *Stebbins*, 9 Paige Ch. 622. See also *McCartney* v. *Fletcher*, 10 App. Cases D. C. 572.

With these general principles in view, we will consider whether the allegations of the bill make a case for discovery. The complainant's action at law is shown to be an ordinary action of assumpsit to recover, upon a *quantum meruit*, for professional services rendered to the respondents in and about the probate of said will and the settlement with Mrs. Banigan. And he alleges that in order to prove what would be a reasonable compensation for said services, it is necessary to show the value of the entire property belonging to the estate of Joseph Banigan.

This is certainly taking an advanced position in the doctrine of discovery. And, aside from the fact that the material allegations of the bill are denied in the answer—which denial must be taken as true for the purposes of the exceptions—we do not think it is tenable. What relation does the value of the entire property of said estate bear to the value of the complainant's services? We fail to see that upon the allegations of the bill it bears any relation thereto. He alleges that said estate, which was extensive in amount, "was variously involved and jeopardized in said contest." But in what contest? The bill fails to show any real contest. It simply shows, at most, that Mrs. Banigan was dissatisfied with the provisions made for her in the will, and that the respondents, "*anticipating*" that she would not

accept thereof, but would contest the probate of the will, made an agreement with her whereby she withdrew her opposition thereto. In other words, the bill shows at most a compromise with the widow regarding her rights in the subject-matter of the will. But suppose we concede that there was a real contest over the will, how does it appear that the estate was jeopardized thereby? The bill does not answer this question. It simply alleges that it was jeopardized, but fails to state how or why to the extent of enabling the court to judge thereof; and, as we have already intimated, a mere allegation of this sort is not enough in a bill for discovery. Moreover, we fail to see how said estate could have been jeopardized by an appeal from the probate of the will, if one had been taken. For, even assuming that the will would not have been sustained, which is certainly on its face a pretty violent assumption, the widow would only have taken her dower in the estate under the statute, and we fail to see how this would have jeopardized the estate. For a thing to be in jeopardy is to be in danger of being lost. The word suggests an even game, or a game in which the chances are even. Century Dictionary. And it certainly cannot be seriously claimed that even if an appeal from the probate of the will had been taken and prosecuted, said estate would have been in danger of being lost or imperiled. Still further, if the will had been set aside, the large and munificent legacies which the testator made to charities, as well as those made to relatives and friends outside of his immediate family, would have mainly enured to the benefit of the respondents, and thereby greatly enhanced their interest in the estate.

Assuming, on the other hand, that if there had been a contest the will would have been sustained, which assumption is certainly as well grounded as the one to the contrary, then we have the case of a settlement with the widow by paying her a large amount in addition to the provisions made for her in the will, without any resulting benefit to the estate except the saving of the cost and expense of litigation. It will be seen, therefore, that the complainant's allegation to the effect

that the settlement effected by him was of great value to the respondents and also to said estate, rests upon mere assumption or conjecture.    If it was made to appear that the estate was in fact in jeopardy, and that the complainant by his skill and ability had rescued and saved it, the case would present a very different aspect, and perhaps he would then be entitled to the general discovery prayed for, although we think that even then to grant it to the extent of requiring the full and particular disclosures called for by the interrogatories would be vexatious and oppressive.    But there being nothing in the case as made, outside of the bare allegation in the bill, to show that it ever was or ever could have been in jeopardy, it cannot be properly said that the complainant has rescued it therefrom.    We see no reason, therefore, why the complainant's action at law stands upon any different footing from the ordinary action to recover for professional services, or why he will not be able, without the aid of the discovery prayed for, to recover a full and fair compensation therefor.

(2)  Of course we do not intend, by what we have said, to minimize the importance and value of the complainant's services in the premises, or to ignore the fact that in determining what a reasonable sum is for the professional services of an attorney-at-law in a given case it is proper to take into consideration the amount of property involved, the questions of law involved, the actual labor performed, the result obtained, and the experience, standing, and ability of the lawyer. For, as said by the court in *Ward* v. *Kohn*, 58 Fed. Rep. 465, "It goes without saying that a larger amount is a reasonable compensation for the same professional services when the amount at stake is $500,000 than where it is $50." In *Selover* v. *Bryant*, 21 L. R. A. 419–434, the court said : "The value of the services of an attorney is necessarily to be determined by many considerations besides the mere time visibly employed in the conduct of a suit.    Among other things, the importance and results of the case are to be considered.    The importance of the cause to the client affords to some extent a measure of the skill, care, responsibility, anx-

iety, and effort demanded of and to be borne by the attorney, and should not be disregarded in their bearing upon the question of the value of such services."

In answering the question "How shall the services of a lawyer be estimated?" in *Eggleston* v. *Boardman*, 37 Mich. 17, the court said: "It is very evident that the responsibility, the care, anxiety, and mental labor is much greater in a case where the amount in controversy is large than where it is insignificant, although perhaps the same questions might be raised in each case, or the more difficult questions arise in the case where the amount was of but slight consequence." And in *Stanton* v. *Embrey*, 93 U. S. 548, the Supreme Court, speaking by Mr. Justice Clifford, said: "Attorneys and solicitors are entitled to have allowed to them for their professional services what they reasonably deserve to have for the same, having due reference to the nature of the service and their own standing in the profession for learning, skill, and proficiency; and, for the purpose of aiding the jury in determining that matter, it is proper to receive evidence as to the price usually charged and received for similar services by other persons of the same profession practicing in the same court." To the same general effect are the following cases cited by complainant, viz.: *People* v. *Bond St. Bank*, 10 Ab. N. C. 15; *Garfield* v. *Kirk*, 65 Barb., 464; *Lombard* v. *Bayard*, 1 Wall. Jr. 196; *Stevens* v. *Ellsworth*, 63 N. W. R. 683; *Clark* v. *Ellsworth*, 104 Ia. 442; *Butler* v. *King*, 48 S. W. R. 697; *Saunders* v. *Seelye*, 21 N. E. R. 601; *Randall* v. *Packard*, 142 N. Y. 47; *Whitney* v. *New Orleans*, 54 Fed. R. 614; *Bowling* v. *Scales*, 1 Tenn. Ch. 618; *International & G. No. R. R.* v. *Clark & Dyer*, 81 Tex. 48; *Smith* v. *R. R. Co.*, 60 Ia. 515; *Ottawa Uni.* v. *Parkinson*, 14 Kansas, 159; *Kentucky Bank* v. *Combs*, 7 Pa. St. 543–5. Under the law as gathered from these authorities, the complainant will evidently have ample opportunity to prove what a lawyer of his large experience and well-known ability ought to receive for his services in and

about the matters in question without the aid of a bill of discovery.

Exceptions overruled.

*Charles E. Gorman,* for complainant.
*Tillinghast & Tillinghast,* for respondents.